UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALAN KING, Jr., | ) | |
| | ) | |
| Movant, | ) | |
| v. | ) | CAUSE NO.  1:08-cv-1710-DFH-TAB |
| | ) | [IP 07-16-CR-01] |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |

**RESPONSE TO MOTION FOR POST-CONVICTION RELIEF**

For its response to the movant Alan King, Jr. motion for post-conviction relief, filed pursuant to 28 U.S.C. § 2255, the United States advises the Court as follows:

**RELEVANT PROCEDURAL HISTORY[1]**

On August 3, 2006, King was charged in a criminal complaint with theft of government property (18 U.S.C. § 641); loan fraud (18 U.S.C. § 1014); and mail fraud (18 U.S.C. § 1341). King was arrested on these charges the next day (August 4, 2006) and was taken before a federal magistrate judge, who ordered King temporarily detained.

On August 9, 2006, King again appeared before a federal magistrate judge, who ordered him released to a Volunteers of America ("VOA") community center where King was to reside under conditions of pretrial supervision.

---

[1] The facts as set forth herein are taken from various materials of record, including the criminal Complaint, the Information, the Petition to Enter a Plea of Guilty, the Plea Agreement (which was rejected by the court), the Judgment in a Criminal Case, and the Presentence Investigation Report ("PSI").  Additionally, referenced is the transcript of King's May 4, 2007 change of plea and sentencing hearing (cited as "GP, p. __, l. __") and the Seventh Circuit's decision dismissing the direct appeal of King's conviction and sentence, reported as *United States v. King*, 506 F.3d 532 (7th Cir. 2007).

On November 17, 2006, King signed a plea agreement that was negotiated by his counsel and counsel for the United States. That agreement was never submitted to the Court because, on November 22, 2006, King absconded from the VOA center. A warrant for King's arrest was issued on November 27, 2006, and King was arrested on that warrant on January 10, 2007.[2]

On January 30, 2007, King was charged by Information with (count 1) theft of government property, in violation of 18 U.S.C. § 641; (count 2) loan fraud, in violation of 18 U.S.C. § 1014; (count 3) false representation of a social security number, in violation of 42 U.S.C. § 408(a)(7)(B); and (count 4) federal student financial aid fraud, in violation of 20 U.S.C. § 1097(a).[3]

Following King's arrest, a new Plea Agreement was negotiated by the parties and that new Plea Agreement was first submitted to the Court on January 10, 2007, and was subsequently resubmitted to the Court (at the court's direction) on February 6, 2007. The new Plea Agreement was a Rule 11(c)(1)(C), Federal Rule of Criminal Procedure agreement, meaning that, if accepted by the Court, its provisions would be binding on the court with respect to any sentence imposed upon King.

On May 2, 2007, a change of plea hearing was conducted. At that hearing, the district court rejected the Plea Agreement that had been submitted to it by the parties. The reasons for

---

[2]During his time as a fugitive, King contacted the Marshal's Service and advised that he would surrender himself but failed to honor that commitment. Additionally, while on fugitive status, King falsely represented social security numbers to obtain fraudulent identification and to obtain via that fraud an automobile. *See United States v. King*, 506 F.3d 532, 535-36 (7th Cir. 2007).

[3]King waived indictment by the Grand Jury in writing and in open court before Magistrate Judge Foster on February 2, 2007.

the Court's decision to reject the Plea Agreement were stated on the record and a transcript of those reasons is attached hereto as Exhibit B.

On May 4, 2007, King appeared before the Court for a change of plea and sentencing hearing.  At the May 4, 2007 hearing, King advised the Court that he wished to plead guilty to the Information without a plea agreement.  The Court advised King at that time that "every now and then a person who pleads guilty later claims that he did not understand what he was doing or did not make a voluntary decision to plead guilty." " For that reason, [the court advised King that it needed] to ask [King] a number of questions today about your understanding of the charges and penalties you face; your condition today; your ability to make an important decision; and about the rights that you give up by pleading guilty."  GP, p. 3, l. 6-12.  The Court also advised King that he could, "at any point," consult with his counsel and if requested, the Court would "explain [any matter that was unclear to King] in more detail."  GP, p. 3, l. 13-16.

King assured the Court (in response to the court's inquiries) that he had received and read the charges against him; that he had discussed the charges and the evidence against him with his counsel; that he had discussed the defense of the case with his counsel; and that he was satisfied with the advise he had received from his counsel.  GP, p. 5, l. 22-25; p. 6, l. 1-25; p. 7, l. 1.  King also assured the Court that he understood the penalties he faced if convicted.  GP, p. 7, l. 2 through p. 10, l. 15.

In response to the Court's questioning on how he (King) presently felt and whether he (King) had been treated for any mental illness, King responded by stating "I feel pretty good" and advised the Court that, except for taking his daily prescription of Elavil 150 milligrams, he had ingested no drugs, medicines or alcoholic beverages in the proceeding twenty-four hours.

GP, p. 4, l. 21-25; p. 5, l. 1-21.

King advised the Court that nobody had made any threats, promises or assurances to him to induce or convince him to plead guilty. GP, p. 13, l. 7-10; p. 13, l. 16-18. King advised the Court that he understood that he was pleading guilty without a plea agreement. GP, p. 10, l. 16-23. King told the court that he had reviewed the signed factual stipulations prepared and submitted to the Court and that the facts as set forth in that document were true. GP, p. 20, l. 4-20. King stated to the Court that he wanted to plead guilty "[b]ecause I'm guilty." GP, p. 20, l. 19-20.

After fully advising King of his rights and of the consequences of pleading guilty, *see* GP, p. 13, l. 21 through p. 20, l. 3, the Court asked King "in light of everything I've explained to you today, and your advice from your lawyer, how do you plead to [the charges against you as alleged in the Information]." GP, p. 21, l. 6-21. King responded that he pled guilty to each charge against him as alleged in the Information. *Id*. The Court then stated that it found King "fully competent and capable of entering an informed plea, and that his pleas of guilty [were] knowingly and voluntary pleas supported by an independent basis in fact, containing each of the essential elements of the offenses charged. GP, p. 21, l. 22-25; p. 22, l. 1-2. The Court then accepted King's pleas of guilty and adjudged him guilty as charged to each count of the Information. GP, p. 22, l. 3-4.

After accepting King's pleas of guilty, the Court proceeded to conduct a sentencing hearing. The Court first considered the guidelines calculations set forth in the PSI and the objections to the PSI's findings raised by King's counsel. GP, p. 22, l. 18 through p. 37, l. 16. After making its rulings on King's objections and hearing from both the defendant King and

King's attorney, the Court determined King's total offense level to be 23 and his criminal history category to be III, resulting in an advisory sentencing guidelines imprisonment range of 57 to 71 months. GP, p. 37, l. 6-8. The Court then noted that the guidelines were only advisory, and that it was considering an upward departure because "Criminal History Category III does not adequately represent the threat of Mr. King engaging in future fraudulent conduct." GP, p. 37, l. 8-12. The Court then entertained further presentation by counsel regarding an appropriate sentence for King. GP, p. 37, l. 13-16.

After hearing further argument and considering the factors set forth in 18 U.S.C. § 3553(a), the Court sentenced King to an aggregate term of imprisonment of 105 months, to be followed by an aggregate term of five years of supervised release. King was also ordered to pay restitution in the amount of $183,845.54, and the mandatory assessment of $400. Judgment was formally entered on the Court's docket on May 10, 2007.

King appealed his conviction and sentence to the Seventh Circuit. *See United States v. King*, 506 F.3d 532 (7th Cir. 2007).[4] In that appeal, the Seventh Circuit rejected King's contention that he was not of "sound mind" when he pled guilty due to an alleged overdose of the drug Elavil. King, 506 F.3d at 534. In rejecting King's claim, the Court noted King's "articulate sentencing allocution" and determined that King's claim of being incompetent to enter a knowing plea of guilty was frivolous. *Id.*

---

[4] On direct appeal, King's counsel filed an Anders brief, *see Anders v. California,* 386 U.S. 738 (1967), because he could find no non-frivolous issue to assert. King, pursuant to Cir. R. 51(b), responded to his counsel's brief and identified potential issues for appellate review. *See United States v. King*, 506 F.3d at 534. The Seventh Circuit addressed the potential issues raised by King and King's counsel, and found all to be without merit. *Id.*

King's appellate panel considered whether the district court erred in rejecting the plea agreement that King's counsel had negotiated with the government and concluded that no error existed on the part of the district court with respect to that issue. *King*, 506 F.3d at 535. The Seventh Circuit also rejected as frivolous claims that the district court erred in finding that King obstructed justice while on pretrial release or that error occurred when the district court denied King any reduction for acceptance of responsibility. *King*, 506 F.3d at 535-36. Additionally deemed by the Seventh Circuit as frivolous was King's challenge to he district court's calculation of King's criminal history category score and King's claim that his sentence of 105 months imprisonment was unreasonable. *King*, 506 F.3d at 536-37. Finally, the Seventh circuit rejected King's assertion that the district court was obligated, but failed, to advise him that it intended to sentence him above his guidelines range. *King*, 506 F.3d at 536 n.3. The Seventh Circuit expressly held that King was properly sentenced pursuant to the elements enumerated in 18 U.S.C. § 3553(a)(1), (2)(A)-(B). King, 506 F.3d at 537.

Having failed to overturn his conviction or sentence on direct appeal, King filed, on December 22, 2008, a motion for post-conviction relief pursuant to 28 U.S.C. § 2255. On January 15, 2009, the district court directed the United States to respond to King's § 2255 motion.

**ISSUES**

1. Whether King's trial counsel was ineffective with respect to King's decision to plead guilty without a plea agreement;

2. Whether King's trial counsel was ineffective for failing to investigate the possibility of a diminished capacity defense;

6

3. Whether King's plea of guilty was entered knowingly, voluntarily and freely.

## DISCUSSION

**I. King's plea of guilty - ineffective assistance of counsel**

After the district court rejected the binding plea agreement that had been negotiated between the United States and King, King entered a plea of guilty to the charges alleged in the Information without the benefit of a plea agreement. King now asserts that he was unaware (until it was too late) of a new (superceding) plea agreement negotiated by his counsel and the United States and further asserts that had he been timely informed of the proposed agreement, he "would have definitely taken it." King's § 2255 Motion, ¶ 12.[5] King also implies that his counsel encouraged him to plead guilty without the benefit of a plea agreement, an assertion directly contradicted by King's former counsel. *See* King's § 2255 motion, ¶ 12; Ex. A (letter dated January 27, 2009 from King's former counsel).

As an initial matter, the United States notes that King does not allege that he was unaware of the efforts to negotiate on his behalf a new plea agreement nor was he unaware, prior to the hearing of May 4, 2007, change of plea hearing, of the existence of the proposed Superceding Plea Agreement. King only asserts that his knowledge of the agreement came to late. That is a curious contention, because if King had raised the matter with the district court, or

---

[5]King, in his § 2255 Motion, asserts that he would have accepted the binding Superceding Plea Agreement, a copy of which is attached to King's § 2255 motion, but whether the court would have accepted that agreement is speculative and problematic. In light of the concerns expressed on the record by the district court when it rejected the earlier plea agreement, coupled with the district court's stated reasons for imposing upon King the sentence of 105 months ultimately imposed, it seems improbable that the district court would have accepted a Superceding Plea Agreement which would have bound it to the imposition of a term of imprisonment of between 57 and 71 months.

had expressed any reservation to pleading guilty due to the existence of the proposed Superceding Plea Agreement, the Court would not have proceeded with the change of plea hearing and could not have accepted King's plea of guilty under such a circumstance. Instead, King assured the Court that he wished to proceed to plead guilty without a plea agreement, and demonstrated his understanding of the consequences of that decision and his capacity to enter a voluntary and knowing plea of guilty. King has failed to demonstrate that his plea of guilty was not knowingly, voluntarily of freely entered, and must not be bound by the consequences of his decision.

Nor does King's belated claim that his counsel encouraged him to plead guilty without the benefit of a plea agreement appear to be truthful. *See* Ex. B, letter from King's former counsel dated January 27, 2009. King's former counsel asserts that he discussed in detail the alternatives facing King the day before King entered his straight-up plea of guilty, including the proposed Superceding Plea Agreement. *Id.*, ¶ 5. King's former counsel notes that the decision of King to plead guilty without a plea agreement was contrary to his advise but was the course King insisted upon and was the course ultimately taken for that reason. *Id.* The decision as to the approach to be taken at sentencing was dictated by King and respected by his counsel. *Id.*

King's assertions as to the advice he received from his counsel are entirely uncorroborated, are contradicted by his statements at his change of plea hearing, and fail to demonstrate any insufficient or inadequate performance of trial counsel with respect to King's decision to plead guilty without a plea agreement. Bald allegations of that nature are insufficient to demonstrate ineffective assistance of counsel. *See, e.g., Granada v. United States*, 51 F.3d 82, 85 (7th Cir. 1995); *Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th Cir. 1991).

## II. Ineffective assistance of counsel - diminished capacity defense

King asserts that his trial counsel was ineffective for not exploring the possibility of a diminished capacity defense. This is a variation of claim raised by King on direct appeal. *See United States v. King*, 506 F.3d at 534. On direct appeal, King asserted he was not of "sound mind" when he pled guilty. That claim was premised on King's assertion that he had "ingested twice his morning dose of Elavil, a drug used to treat depression and anxiety." *Id*. In rejecting that contention, the Seventh Circuit noted that "King has given us no reason to doubt the veracity of his sworn statements [at his change of plea hearing] that, notwithstanding his ingestion of the drug, he understood the charges against him and the consequences of his plea." *Id*. Further, at his sentencing King delivered as articulate sentencing allocation in which he described his upbringing and his reasons for absconding while on pretrial release - he even discussed a New York Times article about alternatives to prison." *Id*.

To the extent that King is asserting that he was not competent when he pled guilty, the issue has been decided already on direct appeal, and this court need not revisit that question. *See Taylor v. United States*, 798 F.2d 271, 273 (7th Cir. 1986). "[A] § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). "Although res judicata does not apply in § 2255 proceedings, the court may still exercise its discretion not to reconsider issues already decided at trial, on direct appeal, or in a prior § 2255 proceeding." *Id.* (Internal quotation marks omitted, citations omitted). King has yet to submit evidence that he suffered any diminished capacity when he committed the crimes for which he stands convicted, or when he pled guilty to those crimes. As noted in King's PSI, King has been diagnosed as a malingerer (one who intentionally fakes physical or psychological

9

illness or symptoms) and one who may pose as mentally ill but is not capable of true remorse for his actions. *See* PSI, ¶ 103. King has presented nothing to discredit this diagnosis.

In order to prevail on a claim of ineffective assistance of counsel, King must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that, as a result thereof, he suffered prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Prejudice is shown only when a defendant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Although a failure by counsel to investigate an aspect of a case may constitute ineffective assistance of counsel, counsel is not deficient if he has "made a reasonable decision that makes particular investigations unnecessary." *Washington v. Smith*, 219 F.3d 620, 631 (7th Cir. 2000) (citing *Strickland v. Washington*, 466 U.S. at 691) (internal quotation marks omitted).

In his letter addressing the issue of King's competency, his former counsel noted "that at no time did Mr. King suggest to [counsel], either expressly or implicitly, that he suffered a mental disease or defect that would render him incompetent . . . nor did [counsel] have any reason to believe that his mental condition prevented him from fully understanding or appreciating the wrongfulness of his conduct." Ex. B, ¶ 7. King's counsel "chose not to press the 'diminished capacity' argument as forcefully as Mr. King would have liked, as [counsel] did not believe it was a persuasive or convincing argument . . . ." *Id*. Rather than ignore the possibility of a diminished capacity defense, King's former counsel made reasonable litigation decisions based upon the facts presented to him and the circumstances of the case. Reasonable

litigation decisions of that nature do not constitute ineffective assistance of counsel.  *See Granada v. United States*, 51 F.3d 82, 84 (7th Cir. 1995).

### III.  Voluntariness of King's plea of guilty

King contends that his plea of guilty was not knowingly and voluntarily entered.  King's assertion appears to be premised upon his contention that he was not mentally competent to enter a knowing and voluntary plea of guilty.  That assertion is belied by the record of King's change of plea hearing and by this court's findings on that issue.  Further, the voluntary and knowing nature of King's plea of guilty was considered and upheld on direct appeal.  *See United States v. King*, 506 F.3d at 534.

It has long been established that a federal prisoner who attacks the validity of his plea of guilty based upon a contention that he was mentally incompetent at he time of the plea has the burden of proving that he was, in fact, incompetent to enter his plea.  *Mealer v. United States*, 383 F.2d 849, 850 (9th Cir. 1967); *Papalia v. United States,* 383 F.2d 620, 621 (2d Cir. 1964).  King has presented nothing to place the earlier finding that he was competent into question.  That issue is settled and need not be revisited.  *See Taylor v. United States*, 798 F.2d 271, 273 (7th Cir. 1986); *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995).

## CONCLUSION

For all of the foregoing reasons, the United States respectfully urges the Court to deny the movant King's motion for post-conviction relief and to dismiss his 28 U.S.C. § 2255 motion with prejudice.

                          Respectfully submitted,

                          TIMOTHY M. MORRISON
                          United States Attorney


                  By: s/Gerald A. Coraz
                       Gerald A. Coraz
                       Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

  I hereby certify that on March 2, 2009, a copy of the foregoing was mailed, by first class U.S. Mail, postage prepaid and properly addressed to the following:

Alan R. King, Jr.
Reg. No. 08297-028
Milan Federal Correctional Institution
Post Office Box 1000
Milan, MI 48160

                s/Gerald A. Coraz
                Gerald A. Coraz
                Assistant United States Attorney

Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204-3048
(317) 226-6333